**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STUART J. SANDROCK,<br><br>                Plaintiff,<br>vs.<br><br>SHOE, M.D., DING, M.D., N. LIND, M.D., LEE, M.D., GUENTHER, R.N., J RIVERA, THE CALIFORNIA DEPARTMENT OF CORRECTIONS, THE STATE OF CALIFORNIA, and DOES One through Ten, inclusive,<br><br>                Defendants. | **CASE NO. 10-CV-825-H (WMC)**<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

    On November 5, 2010, Defendants filed a motion to dismiss Plaintiff's Second Amended Complaint ("SAC"). (Doc. No. 58.) On November 22, 2010, Plaintiff filed his response in opposition to Defendant's motion to dismiss. (Doc. No. 62.) On December 6, 2010, Defendants filed their reply. (Doc. No. 64.) For the following reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's Second Amended Complaint.

///
///
///

## BACKGROUND

On July 22, 2010, Stuart Sandrock ("Plaintiff"), a state prisoner incarcerated at Ironwood State Prison ("Ironwood") and proceeding pro se,[1] filed a Second Amended Complaint ("SAC") against Defendants Choo (erroneously sued as Shoe), Ding, Lind, Lee, Guenther, Rivera, in their personal and official capacities, the California Department of Corrections, and the state of California ("Defendants") pursuant to 42 U.S.C. § 1983. (Doc. No. 29.) Plaintiff alleges claims for deliberate indifference to medical needs under the Eighth Amendment and retaliation under the First Amendment, and seeks compensatory and punitive damages, as well as declaratory relief. (Id.)

Plaintiff alleges that over 10 years ago, his family physician at Kaiser Permanente prescribed Plaintiff 360 mg of Morphine Sulphate Extended Release ("MSER") per day to relieve chronic lower back pain. (Doc. No. 29 at 3–4.) Plaintiff alleges that Plaintiff's treatment continued while his was incarcerated awaiting trial. (Id. at 5-6.) Plaintiff alleges that in 2007, he was convicted of a firearms offense. (Id. at 6.) Plaintiff alleges that on November 30, 2009, he was transferred to Donovan state prison, where he was examined by Defendant Ding, who ordered Plaintiff's medication dosage cut in half. (Id.) Plaintiff further alleges that on January 5, 2010, Defendant Choo instituted additional reductions of Plaintiff's medication dosage. (Id. at 7-8.) Plaintiff states that on January 19, 2010, Plaintiff met with Defendant Guenther, who acknowledged that Plaintiff was in pain, but would not permit Plaintiff to meet with a doctor to have his medication dosage increased. (Id. at 9-10.) Plaintiff states that on January 28, 2010, his medication was completely eliminated and he did not receive any medication for three days. (Id. at 13.) Plaintiff alleges that on February 2, 2010, he was transferred to Ironwood State Prison ("ISP"). (Id. at 19.) Plaintiff also alleges that Defendant Lee created a standing order to take Plaintiff back to his cell whenever Plaintiff had an increase

---

[1] The Court takes judicial notice of the fact that Plaintiff Stuart J. Sandrock was a licensed attorney in the State of California from 1991 until his suspension in 1993 after a criminal conviction for solicitation of murder, possession of cocaine, possession of a machine gun, and possession of a concealed and loaded weapon. (See Doc. No. 27 at 1 in Sandrock v. Gomez, 95-CV-3968-K (RBB); Doc. No. 1 at 9 n.1 in Sandrock, et al v. France, et al., 97-CV-1489-JM (LAB).)

1  in pain, even though Plaintiff and Lee never met. (Id. at 26–32.)

2  Plaintiff alleges that Defendants retaliated against Plaintiff for his past grievance fillings by lying about the absence of his previous Kaiser medical file in order to change his medication. (Id. at 43.) Plaintiff also alleges that he was transferred to ISP by Defendants and temporarily housed in a level III yard in retaliation for his inmate appeals regarding his medication. (Id. at 46–49.) Plaintiff claims that staff at Donovan are known for retaliation, and it is commonly known amongst prisoners that "troublemakers" are sent to ISP. (Id.)

## DISCUSSION

### I.  Motion to Dismiss Standard

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief may be granted." (Doc. No. 58.) Additionally, Defendants move for dismissal under the non-enumerated provisions of Fed. R. Civ. P. 12(b) for failure to exhaust administrative remedies. (Id.)

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Navarro v. Black, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 557).

Failure to exhaust nonjudicial remedies is treated as a matter of abatement and is properly raised as a non-enumerated motion under Fed. R. Civ. P. 12(b). See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir. 1988). "In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119–20. Defendants have the burden

of proving that plaintiffs failed to exhaust their administrative remedies. <u>Id.</u> To show failure to exhaust, Defendants may submit affidavits or declarations outside the pleadings. <u>Id.</u>

## II.     Eleventh Amendment Immunity

Plaintiff names the State of California and the California Department of Corrections as Defendants in this case. However, the Eleventh Amendment prohibits suits against unconsenting states in federal court. <u>Brooks v. Sulphur Springs Valley Elec. Coop.</u>, 951 F.2d 1050, 1053 (9th Cir. 1991). "[T]he Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states." <u>Id.</u>; <u>see also</u> <u>Tennessee v. Lane</u>, 541 U.S. 509, 517 (2004). The Eleventh Amendment also bars suits against state agencies. <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 144 (1993). Therefore, Plaintiff may not maintain a cause of action against the State of California or the California Department of Corrections. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's SAC as against Defendants the State of California and the California Department of Corrections

Plaintiff also seeks compensatory and punitive damages against individual Defendants. (Doc. No. 29 at 47–51.) However, the Eleventh Amendment provides immunity for Defendants acting in their official capacities in suits for damages. Suits for damages against state officials in their official capacity are also barred by the Eleventh Amendment. <u>See</u> <u>Flint v. Dennison</u>, 488 F.3d 816, 824–25 (9th. Cir. 2007). Therefore, inmate claims against prison officials, in their official capacities, are barred. <u>See</u> <u>Leer v. Murphy</u>, 844 F.2d 628, 631–662 (9th Cir. 1988). However, the Eleventh Amendment does not bar suits for prospective declaratory judgment or injunctive relief against state officials in their official capacity. <u>See</u> <u>Idaho v. Coeur'd Alene Tribe of Idaho</u>, 521 U.S. 261, 269 (1997). It also does not bar suits seeking damages against state officials in their personal capacity. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 30–31 (1991). Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's SAC as against Defendants Choo, Ding, Lind, Lee, Guenther, and Rivera in their official capacities.

///

### III. Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust all available administrative remedies before filing in federal court. See U.S.C. § 1997e(a); McKinney v. Carey, 311 F.3d 1198 (2002). To fully exhaust all available remedies, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In California, the full process has four steps: (1) attempt at informal resolution, (2) first formal level appeal, (3) second formal level appeal, and (4) third, or director's level appeal. Cal. Code Regs., tit. 15 § 3084.5. A decision at the third formal level is final and satisfies the exhaustion requirement. Id. at § 3084.1(a). When deciding whether to dismiss for failure to complete administrative remedies, a court can "look beyond the pleadings and decide disputed issues of fact." Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003).

Defendants argue that Plaintiff has never had an appeal decided on the merits at the third formal level for either his deliberate indifference claim or his retaliation claim. (Doc. No. 58 at 7.) Defendants submitted declarations from persons familiar with tracking inmate appeals indicating that Plaintiff never had a third level appeal decided on the merits. (Doc Nos. 58-2, 58-3.) Plaintiff had only one appeal submitted to the third level, and it was screened out due to failure to properly utilize the lower appeal levels. (Doc. No. 58 at 7.) Defendants therefore argue that Plaintiff's complaint must be dismissed due to failure to exhaust administrative remedies.

In Plaintiff's response to Defendants' motion to dismiss, Plaintiff argues that he raised both of his claims at each level and received a response from each level. (Doc. No. 62 at 3–4.) However, Plaintiff acknowledges that he did not receive a response on the merits at the third formal level. (Id. at 4.) Instead, Plaintiff contends that he is not required to complete the entire appeals process because it has been made "unavailable to him," citing Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2004). (Id. at 7.) In Marella, the Ninth Circuit stated that "[t]he absence of a proper administrative process for a prisoner to appeal from an initial rejection of

an appeal does not abrogate the requirement that he comply with a prison's procedural requirements. If a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies." Marella, 568 F.3d at 1028. The district court dismissed the complaint in Marella, because plaintiff did not exhaust his administrative remedies after being told by an administrator that "no remedies are available." Marella, 568 F.3d at 1027. The Ninth Circuit reversed, and instructed that "[o]n remand, if the district court finds that Marella had the opportunity and ability to file his initial grievance timely, but failed to do so, his case should be dismissed." Id.

Plaintiff has failed to show that no further administrative remedies were available to him. Plaintiff failed to properly exhaust his remedies, because Plaintiff's only appeal to the third level was screened out as procedurally defective. Plaintiff concedes that his second-level appeal was screened out for failure to demonstrate the issue he was appealing adversely affected his welfare. (Doc. No. 62 at 4.) The Inmate/Parolee Appeals Screening Form, attached as Exhibit O to the SAC, stated that Plaintiff's appeal was "a request not an appealable issue," and instructed Plaintiff to "submit a GA-22 to [Plainitff's] medical clinic to check the status of [Plaintiff's] appointment." (SAC, Ex. O.) Notably, the Form also informed Plaintiff that the screening action could not be appealed, and provided instructions on how to proceed if Plaintiff believed that the screen-out reasons were inaccurate. (Id.) Specifically, the Form informed Plaintiff that he had 15 days to correct his appeal. Plaintiff concedes that instead of following the instructions on the Screening Form, he proceeded to file a third-level appeal, which was screened out for failure to resolve the issues at the lower levels. (See Doc. No. 62 at 4; SAC, Ex. FF.)

The law requires an inmate to exhaust his administrative remedies prior to filing suit. McKinney, 311 F.3d at 1199. Plaintiff has not presented any information to support his claim that the appeals process has been made unavailable to him. Nothing in the screen-out letter suggests that no administrative remedies were available for Plaintiff's medical concerns. (See SAC, Ex. O.) The Court concludes that Plaintiff failed to properly exhaust his claims through the third level of appeals before bringing this suit. See Wyatt, 315 F.3d at 1119–20.

Plaintiff also argues that his administrative remedies were unavailable, because Defendants retaliated against him for filing medical complaints. (Doc. No. 62 at 10.) Plaintiff cites to Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008). Threats of "substantial retaliation against an inmate for lodging in good faith a grievance make the administrative remedy 'unavailable,' and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." Turner, 541 F.3d at 1083. Here, Plaintiff has not alleged that he received any threats of "substantial retaliation" from any prison official, or that he was actually deterred from appealing determinations regarding his medical care. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's Second Amended Complaint for failure to exhaust administrative remedies.

**IV. Retaliation**

Plaintiff also alleges that Defendants retaliated against him by housing him differently than other inmates in similar situations, providing poor medical treatment, and transferring him between different prisons. (SAC at 45–49). To state a claim for First Amendment retaliation against prison officials, a plaintiff must allege that: "(1) a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chill the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). Additionally, the claim is evaluated in light of the deference that must be accorded to prison officials, and plaintiff must establish a link between the exercise of his constitutional rights and the allegedly retaliatory action. Pratt v. Rowland, 65 F.3d 802, 806–07 (9th Cir. 1995.) Plaintiff fails to meet these requirements. Plaintiff's allegations of retaliation fail to connect the alleged acts of retaliation with his exercise of his First Amendment rights. Plaintiff makes generalized allegations about staff at Donovan, but does not provide any specific

1 allegations of the connection between the staff's actions and Plaintiff's filed grievances.
2 Plaintiff also fails to properly allege any connection between the medical staff's decisions and
3 Plaintiff's transfers. Additionally, as noted above, Plaintiff has failed to exhaust administrative
4 remedies as to his retaliation claim.

5      Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for
6 retaliation.

## CONCLUSION

8      For the reasons state above, the Court GRANTS  Defendants' motion to dismiss
9 Plaintiff's Second Amended Complaint.  Because the Court concludes that the action must be
10 dismissed for failing to exhaust prior to the filing of the suit, the Court dismisses the Second
11 Amended Complaint.  See Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008).  As any
12 Third Amended Complaint would be futile based on this record, the Court terminates the case.

13 **IT IS SO ORDERED.**

14 DATED: December 9, 2010

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

19 COPIES TO:
20 All parties of record.